PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CINDA KEENER, *et al.*, | ) | |
| | ) | CASE NO. 5:13cv1073 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| NATIONAL NURSES ORGANIZING COMMITTEE, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF No. 7] |

Pending before the Court is the Motion to Dismiss filed by Defendant National Nurses Organizing Committee ("NNOC").  ECF No. 7.  The Court has been advised, having reviewed the record, the parties' briefs and the applicable law.  For the reasons that follow, the Court grants NNOC's motion.

## I.  Background

Plaintiffs Cinda Keener, Susan Kelley, Ryan Chizmadia, and Katherine Manfull (collectively "Plaintiffs") are registered nurses employed by Affinity Medical Center ("Affinity") in Massillon, Ohio.[1]  ECF No. 1 at 1.  In July 2012, the nurses were not represented by a union. *Id*. at 3, ¶7.  In late July 2012, NNOC, a union, began its campaign to organize the nurses at Affinity. *Id.* at ¶8.  At that time, Affinity announced that it had entered into an "election procedures agreement" with NNOC. *Id*.

---

[1] Affinity's parent corporation is Community Health Systems ("CHS").  ECF No. 1 at 3, ¶6.  The allegations in the Complaint describe conduct attributed to "Affinity" and "Affinity and/or CHS."  The distinction is irrelevant for present purposes.  The Court, therefore, uses "Affinity" throughout the balance of the opinion.

(5:13cv1073)

Plaintiffs allege that the election procedures agreement provided assistance to NNOC in conducting its campaign at Affinity by granting NNOC access to Affinity's property and the names and addresses of nurses. *Id*. at 3-4, ¶9. The election procedures agreement also allegedly restricted Affinity's communication. *Id*. Plaintiffs allege that in return, NNOC promised labor peace and pre-negotiated bargaining concessions. *Id*. at 3-4, ¶10. The election procedures agreement also allegedly provided for a consent election in which any challenges or objections to the election were to be resolved by arbitration, rather than by the National Labor Relations Board ("NLRB"). *Id*. at 5, ¶11.

The NLRB conducted an election at Affinity on August 29, 2012. *Id*. at ¶12. There were 100 votes in favor of NNOC representation, 96 votes against representation, and 7 challenged ballots. *Id*. On September 5, 2012, Affinity filed objections to the election with the NLRB, Region 8, alleging NNOC misconduct. *Id*. at 5-6 at ¶13. Plaintiffs Keener and Kelley, represented by counsel, moved to intervene in the action and submitted their own objections. *Id*. at 6, ¶14. In part, Keener and Kelley objected to an alleged "secret agreement" between NNOC and Affinity. ECF No. 8 at 9; 9-1; 9-2 at 3-4. The NLRB Regional Director denied Keener's and Kelley's motion. ECF No. 8 at 9. Keener and Kelley appealed, and the denial was affirmed. *Id*.

The NLRB, Region 8, resolved the challenged ballots, resulting in a final vote of 103 in favor of NNOC representation and 97 against. ECF No. 8 at 10. Accordingly, on October 5, 2012, the NLRB Regional Director certified NNOC as the exclusive representative of the nurses at Affinity. ECF No. 1 at 6, ¶15. Affinity refused to recognize or bargain with NNOC. And, NNOC filed an unfair labor practice charge with the NLRB, Region 8. *Id*. at 6, ¶16; ECF No. 8

(5:13cv1073)

at 10.  An administrative law judge found that Affinity's refusal to recognize or bargain with

NNOC violated Section 8 of the National Labor Relations Act, 29 U.S.C. § 158 ("NLRA").  ECF

No. 9-9 at 3.  Throughout the proceedings, Plaintiffs Keener and Kelley continued to file motions

to intervene.  Their motions were denied.  ECF No. 8 at 10-14.

       Plaintiffs filed the instant lawsuit.  They allege that NNOC and Affinity entered into a

"secret pre-negotiation agreement" which contained pre-bargained terms of employment

regarding health and dental insurance, life insurance, retirement plans, and substance abuse.[2]

ECF No. 1 at 7-8, ¶¶18-20.  Plaintiffs submit that NNOC entered into the secret pre-negotiation

agreement in return for Affinity's agreement to enter into the elections procedures agreement,

and that the agreement "poses a direct and significant threat to Plaintiffs' rights and interests."

Id. at ¶¶23, 24.  These allegations serve as the basis for Plaintiffs' Complaint, which includes

four claims against NNOC for breach of duty of fair representation.

       NNOC filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6).  ECF No. 7.  NNOC argues the Court lacks subject matter jurisdiction over

Plaintiffs' claims because the allegations describe only violations of Section 8 of the NLRA, and

that the NLRB has exclusive jurisdiction over Section 8 violations.  ECF No. 8 at 16.  NNOC

also contends Plaintiffs' Complaint fails to state a cognizable claim, and that the action is time-

---

[2] Although Plaintiffs separately identify the "election procedures agreement" and a "pre-negotiated agreement," it appears that the pre-negotiated agreement refers to the alleged bargaining concessions within the election procedures agreement.  *See* ECF No. 1 at 3-8.

3

(5:13cv1073)

barred by the statute of limitations.[3] *Id.* at 21-25.

## II.  Legal Standard

In deciding a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)). The factual allegations in the complaint "must contain something more . . . than . . . merely

---

[3]  The Court may consider the statute of limitations argument pursuant to Fed. R. Civ. P. 12(b)(6) in the instant case.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (When "the allegations in the complaint affirmatively show that the claim is time-barred . . . ., dismissing the claim under Rule 12(b)(6) is appropriate.").

4

(5:13cv1073)

creat[ing] a suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555-56 (quoting 5 C.

Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235–236 (3d ed.2004)).  In

addition to reviewing the claims set forth in the complaint, a court may also consider exhibits,

public records, and items appearing in the record of the case as long as the items are referenced

in the complaint and are central to the claims contained therein.  *Bassett v. Nat'l Collegiate*

*Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  Analysis

**A.  Subject Matter Jurisdiction Pursuant to Fed. R. Civ. Pro. 12(b)(1)**

NNOC argues that the Court lacks subject matter jurisdiction because Plaintiffs' claims

are within the exclusive jurisdiction of the NLRB.  NNOC submits that "plaintiffs' claims are

cognizable only as unfair labor practices in violation of Section 8(b) of the National Labor

Relations Act, 29 U.S.C. §158(b)" and that activity subject to § 7 or § 8 of the NLRA is within

the NLRB's exclusive jurisdiction.  ECF No. 8 at 16.  In support of its argument, NNOC alleges

that when Plaintiffs attempted to intervene in the NLRB proceedings the NLRB, in denying

Plaintiffs' request to intervene, "expressly noted that Plaintiffs could present their position in a

timely filed unfair labor practice charge."  *Id*. at 17.  NNOC argues this illustrates that the

conduct involved is under the purview of the NLRB.  *Id*.  Whatever wisdom the NLRB may have

imparted to Plaintiffs regarding Plaintiffs' repeated failings intervening in the case before the

NLRB, however, does not dictate whether the Court has subject matter jurisdiction over the

instant case.

Next, NNOC relies on *Montague v. NLRB*, 698 F.3d 307 (6th Cir. 2012), to support its

(5:13cv1073)

argument that the Court lacks jurisdiction because Plaintiffs' claims assert violations of Section

8.  Although *Montague* is factually similar with respect to the contract between the parties, the

legal claims and procedural posturing in *Montague* are different from those in the instant case.  In

*Montague*, the plaintiffs filed an unfair labor charge with the NLRB.  *Id*. at 310.  The NLRB

issued a complaint alleging violations of Section 8.  *Id.*  The ALJ dismissed the complaint and

the Board affirmed.  *Id*. at 310-311.  The plaintiffs petitioned the Sixth Circuit for review of the

Board's decision, and the court affirmed.  *Id*. at 313.  The issue of subject matter jurisdiction was

not before the *Montague* court.  And the plaintiffs in *Montague* did not allege a breach of the

duty of fair representation.  Plaintiffs, in the instant case, do.  *See* ECF No. 1.  NNOC admits that

federal courts have concurrent jurisdiction with the NLRB over claims alleging a breach of duty

of fair representation.  ECF No. 8 at 19.

NNOC argues that Plaintiffs' claims for breach of duty of fair representation are illusory.

It contends that Plaintiffs' claims sound in activity subject to Section 8 but have been recast as

claims for breach of duty of fair representation in an attempt to "circumvent the NLRB's primary

jurisdiction." *Id*. *See Communications Workers of America v. Beck*, 487 U.S. 735, 743 (1988);

*Marquez v. Screen Actors Guild*, 525 U.S. 33, 49 (1998 ) ("The ritualistic incantation of the

phrase 'duty of fair representation' is insufficient to invoke the primary jurisdiction of federal

courts.").  NNOC urges the Court to consider whether the heart of Plaintiffs' claims contain

allegations subject to Section 8, defeating subject matter jurisdiction, or contain allegations

regarding the duty of fair representation, in which case the Court has subject matter jurisdiction.

(5:13cv1073)

When a plaintiff alleges acts subject to Section 8, the NLRB has exclusive jurisdiction.[4]

When a plaintiff alleges a breach of the duty of fair representation, a federal court has concurrent

jurisdiction.  *See id.*  Plaintiffs allege four counts in the Complaint for breach of duty of fair

representation: Count 1 is based on "concealment of the pre-negotiated agreement," ECF No. 1 at

9; Count 2 is based on "divided loyalties" because NNOC "granted Affinity contractual control

over what NNOC could seek for the nurses in collective bargaining," *id*. at 10, ¶32; Count 3 is

based on "self-dealing at employee's expense" because NNOC accepted "assistance" from

Affinity in unionizing the nurses in exchange for pre-negotiating concessions, *id*. at ¶¶33, 34; and

Count 4 is based on NNOC "agreeing to bargaining concessions in exchange for unlawful things

of value" when it accepted Affinity's assistance, *id*. at 11.

NNOC argues that these claims do not implicate the duty of fair representation because

they are based on NNOC's conduct prior to the time NNOC became the exclusive representative

of the nurses, and that a duty of fair representation only attaches when a union is the exclusive

representative.  ECF No. 8 at 20.  This argument is not responsive to the question

posed—whether Plaintiffs' claims allege a breach of the duty of fair representation or merely

describe acts subject to Section 8.  Instead, NNOC's argument speaks to whether Plaintiffs'

claims for fair representation have merit, which is reviewed for sufficiency of the claim pursuant

to Fed. R. Civ. Pro. 12(b)(6).

 In the instant case, Plaintiffs allege the union's conduct is unlawful because it breaches

---

[4]  Section 8(b) describes acts that constitute an unfair labor practice by a union.  These
acts include restraining or coercing employees who exercise their right to self-organize and
bargain collectively.  29 U.S.C. § 158(b)(1)(A).

(5:13cv1073)

the duty of fair representation.[5]  Although the conduct may be challenged by a plaintiff as a

violation of Section 8, Plaintiffs assert that the conduct breaches the duty of fair representation.

The Court, therefore, finds that because Plaintiffs allege a breach of duty of fair representation,

the Court has subject matter jurisdiction over the claims.  *See Beck*, 487 U.S. at 743 (claims

alleging breach of fair representation include contract negotiation activities); *Merritt v.

Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619-621 (6th Cir. 2010) (same).

### B.  Dismissal Pursuant to Fed. R. Civ. Pro. 12(b)(6)

NNOC argues that Plaintiffs fail to state a claim because the activity complained of—the

pre-negotiated agreement—was negotiated prior to NNOC becoming the exclusive representative

of the employees.[6]  ECF No. 8 at 20.  NNOC submits that the allegations in Plaintiffs'

Complaint—that these acts breached NNOC's duty of fair representation—are without merit

because a union's duty of fair representation only attaches after a union becomes the exclusive

representative of the employees per Section 9(a) of the NLRA.  *Id*.  Plaintiffs agree that NNOC

---

[5]  The Court is aware that, as in similar lawsuits regarding pre-negotiated contracts between an employer and union, "Plaintiffs are represented in their efforts in part by the National Right to Work Legal Defense Foundation, an organization that champions the right of individual workers to be free from union representation."  *Patterson v. Heartland Indus. Partners*, 428 F.Supp.2d 714, 715 (N.D.Ohio 2006) (upholding pre-negotiation contract over the plaintiffs' challenge that the contract violates 29 U.S.C. § 186); *see also Montague*, 698 F.3d at 309, 316 (denying the plaintiffs' petition to review NLRB decision that pre-negotiated agreements between a union and employer do not violate the NLRA); *Adcock v. Freightliner LLC*, 550 F.3d 369, 374-76 (4th Cir. 2008) (affirming district court's dismissal of the plaintiff's RICO claim based on argument that pre-negotiated agreements violate 29 U.S.C. § 186).  The Court is also aware that Plaintiffs in the instant case are, essentially, complaining of the same conduct—that the union and employer entered into a pre-negotiated contract.

[6]  NNOC disputes that an agreement had been reached.  ECF No. 16 at 3.

(5:13cv1073)

did not owe them a duty of fair representation until October 5, 2012, when the Regional Director

certified NNOC as the exclusive representative.  ECF No. 14 at 13.  Plaintiffs, however, retort

that their claims involve "wrongful conduct that occurred after NNOC became their exclusive

representative, namely the union's ongoing concealment (Count [1]) and maintenance (Counts

[2]-[4]) of the Pre-Negotiated Agreement." *Id*. at 11.  The parties also disagree about whether

Plaintiffs' claims are barred by the statute of limitations.  *Id*.; ECF No. 8 at 23.  The Court begins

by first considering Counts 2, 3 and 4.

### 1.  Counts 2 Through 4

Count 2 alleges that the pre-negotiation agreement exhibits "divided loyalties" that breach

NNOC's duty of fair representation to Plaintiffs.  ECF No. 1 at 10.  Count 2 describes what

NNOC did before it became the employee's representative.  *See id*, ¶32 ("NNOC is breaching its

duty of loyalty to Plaintiffs and their co-workers because it *granted* Affinity contractual control

over what NNOC could seek for the nurses in collective bargaining with Affinity. . ." (emphasis

added)).  There are no allegations contained in Count 2 that describe any continuing conduct on

the part of NNOC.   Similarly, Count 3 only contains allegations of past acts—"NNOC *engaged*

in self-dealing by *pre-negotiating* . . . . NNOC thereby *acted* in bad faith and *violated* its duty of

fair representation." *Id*. at ¶34.  Because these claims only allege conduct that occurred prior to

the emergence of a duty on the part of NNOC, these claims cannot be the basis for a duty of fair

representation.

Count 4 alleges a violation of the duty of fair representation because the pre-negotiation

agreement violated section 302(b)(1) of the Labor Management Relations Act, 29 U.S.C. §

9

(5:13cv1073)

186(a)(2), which makes it unlawful for an employer to "pay, lend, or deliver, or agree to pay,

lend, or deliver, any money or other thing of value . . . to any labor organization."  Again, the

agreement was purportedly entered into prior to the time NNOC became the employees'

exclusive representative and the allegations contain no claim of ongoing conduct.  *See* ECF No. 1

at 11-12, ¶39 ("NNOC acted in bad faith and violated its duty of fair representation by pre-

negotiating").  Counts 2, 3 and 4 fail to state a claim and are dismissed.

### 2.  Count 1

#### a.  Failure to State a Claim

In Count 1, Plaintiffs allege that NNOC is acting in bad faith and is breaching its duty of

fair representation because it is concealing the pre-negotiation agreement from Plaintiffs.  ECF

No. 1 at 9, ¶¶29, 30.  NNOC, in reply, attaches a copy of a proposed "Labor Relations

Agreement" and a "Side Letter on Framework for Bargaining"—items that purportedly constitute

the pre-negotiation agreement.  ECF No. 16-2 at 5-39.  Also attached are emails between NNOC

and CHS's attorney and a declaration of David Johnson, NNOC's National Director of

Organizing.  *Id*. at 1-4; ECF No. 16-1.  Johnson, in the declaration, avers that the pre-negotiation

agreement was never signed by both parties and that, therefore, it failed to go into effect.  *Id*. at 2-

3, ¶¶5-6.  Thus, it is NNOC's argument that, "[c]ontrary to the Plaintiffs' professed belief, there

was never any agreement reached between NNOC and Affinity Medical Center that would

determine[] in advance terms of an initial collective bargaining agreement, whether beneficial or

detrimental to their interests."  ECF No. 16 at 6.  In other words, NNOC argues that it did not

conceal an agreement because there was no agreement to conceal.

10

(5:13cv1073)

Pursuant to Fed. R. Civ. Pro. 12(b)(6), a court may properly consider a contract referenced in the complaint and attached by a defendant in a motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Marsilio v. Vigluicci*, 924 F.Supp.2d 837, 846 (N.D.Ohio 2013). "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Southeast LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal citations, quotation marks and alterations omitted). Although the pre-negotiation agreement was referenced in Plaintiffs' Complaint, the Court cannot consider the agreement, submitted with NNOC's brief in reply, because Plaintiffs challenge the existence and relevance of the contract at issue. *See* ECF No. 18 at 5 (Plaintiffs asserting that Affinity "contends that it is a party to an implied-in-fact agreement with NNOC.").[7] And despite NNOC's argument that the Court may consider the documents because they "may be treated as part of the complaint under Fed. R. Civ. Pro. 12(b)(1)," which has a more permissive scope, the Court is analyzing Plaintiffs' claim under a 12(b)(6) standard. Accordingly, the Court may not consider the documents attached to NNOC's brief in reply unless it converts the matter to a motion for summary judgment pursuant to Fed. R. Civ. Pro. 56.

The Court, therefore, considers Count 1 based on the sufficiency of the claim.

The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (citations omitted).

---

[7] The Court permitted Plaintiffs to file a sur-reply to respond to NNOC's new arguments and documents attached to its brief in reply.

(5:13cv1073)

      This duty applies in all contexts of union activity, including contract negotiation, administration, enforcement, and grievance processing. *Williams v. Molpus*, 171 F.3d 360, 364–65 (6th Cir.1999) (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 77, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)). A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca*, 386 U.S. at 190, 87 S.Ct. 903.

*Merritt*, 613 F.3d at 619. "A union acts in bad faith when it acts with an improper intent, purpose, or motive . . . encompassing fraud, dishonesty, and other intentionally misleading conduct." *Id.* (internal quotation marks and alterations omitted).

      Plaintiffs allege NNOC's concealment of the pre-negotiation agreement is in bad faith. ECF No. 1 at 9, ¶¶29, 30. In support of their argument that concealment of the agreement is in bad faith and breaches the duty of fair representation, Plaintiffs rely on four cases discussed herein. In *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1140-41 (2d Cir. 1994), a union leader ignored the union bylaws that provided for membership participation when a modification of the collective bargaining agreement was proposed. Instead, the union leader reached a secret side-deal with the employer at the expense of the employees' seniority rights under the collective bargaining agreement. *Id.* The union official concealed the secret deal from the employees and told them their seniority rights in the collective bargaining agreement would be honored. *Id.* The seniority rights were not honored. *Id.* The union leader also refused to process an employee's grievance. *Id.* The court found the union acted in bad faith because the official concealed the secret side-deal that was contrary to the collective bargaining agreement and misrepresented to the employees that their rights under the agreement would be honored. *Id.* at 1142-1143.

      In *Aguinaga v. United Food and Commercial Workers Int'l*, 993 F.2d 1463, 1470 (10th

(5:13cv1073)

Cir. 1993), the employer planned to open a new, non-union plant.  This plan violated the

collective bargaining agreement.  *Id.*  The union entered into a secret deal with the employer

releasing all future employee claims against the employer for opening the new plant.  *Id.*  The

union's efforts to conceal the secret deal went so far as the union filing an unfair labor practice

charge against the employer, in furtherance of the union's pretense that it was representing the

employees, and then secretly withdrawing the charge so that the NLRB would not issue a

complaint against the employer.  *Id.*  The court affirmed a jury verdict that the union's

conduct—sacrificing employee's rights to remedy a breach of contract against the

employer—and the efforts the union took to conceal these matters constituted bad faith and

breached the duty of fair representation.  *Id*. at 1141.

Plaintiffs also cite to *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096 (6th Cir. 1981).  The

court in *Farmer* did not consider whether the union's conduct was bad faith, but whether the

conduct was arbitrary.  *Id*. at 1103.   In *Farmer*, the court found that the union breached its duty

of fair representation when it arbitrarily failed to process female employees' grievances in

violation of the collective bargaining agreement.  *Id.*  The court also found that the union

breached its duty by entering into a collective bargaining agreement that perpetuated sexually

discriminatory employment patterns, and which contained terms that did not represent what the

union described to the members (and which terms the members had expressly voted against).  *Id*.

at 1103-04.

Lastly, Plaintiffs rely on *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293

(7th Cir. 1992).  *Ooley* is not relevant to Plaintiffs' claims.  *Ooley* did not involve concealment,

13

(5:13cv1073)

but a union's decision to drop an employee's grievance. *Id*. at 1296-97. Despite evidence of the union's bad faith in dropping the grievance, the court ultimately affirmed summary judgment in favor of the union because the plaintiffs' grievance lacked merit. *Id*. at 1303-04.

In sum, the "concealment" cases Plaintiffs rely on to support their legal theory involve a breach of duty of fair representation because a union (1) breached the collective bargaining agreement, and (2) concealed the breach from the employees (3) to the detriment of the employees. In the instant case, Plaintiffs only allege NNOC concealed a pre-negotiation agreement. Count 1, therefore, does not contain allegations that describe a breach of the duty of fair representation. Accordingly, Count 1 fails to state a claim and is dismissed.

### b. Statute of Limitations

Additionally, Count 1 is barred by the statute of limitations as to Plaintiffs Keener and Kelley. A claim alleging a violation of the duty of fair representation must be brought within six months. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-71 (1983); *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985). The six-month limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.*

Plaintiffs filed this lawsuit on May 10, 2013. Keener and Kelley knew NNOC was allegedly concealing "a secret agreement or agreements" from them "despite employees requests for the agreement(s)" at least by September 5, 2012. ECF No. 9-1 at 2 ("Employee Interveners' Objections" filed with the NLRB, Region 8, on September 5, 2012); *see also* 9-2 at 3-4

(5:13cv1073)

("Employee Interveners' Request for Special Permission to Appeal" dated September 19, 2012).[8]

Keener and Kelley, as described in the Complaint, filed a motion to intervene in the NLRB case

and  interveners' objections on September 5, 2012.  ECF No. 1 at 6, ¶14.  As the interveners'

objections make clear, Keener and Kelley knew that NNOC was allegedly concealing a secret

agreement at least by September 5, 2012, more than six months before filing a lawsuit.

    Plaintiffs urge the Court to apply the ruling in *Nida v. Plant Prot. Ass'n Nat'l*, 7 F.3d 522,

525 (6th Cir. 1993) to their claim.  ECF No. 14 at 12.  In *Nida*, the Sixth Circuit found that the

six-month statute of limitations period did not begin to run when the plaintiffs discovered the

existence of an arbitration settlement, but began to run when the plaintiffs discovered the terms

and conditions of the arbitration settlement.  7 F.3d at 525.  The court explained that the

"plaintiffs did not reasonably know of the specific conduct" that formed the basis of their claim

until they discovered the terms of the agreement.  *Id.*  In the instant case, the terms of the alleged

agreement between Affinity and NNOC are not the basis of Plaintiffs' claims.  Rather, it is the

specific act of concealment that Plaintiffs allege constitute the violation, of which Keener and

Kelley knew about outside the limitations period.

    Plaintiffs also argue that "NNOC's ongoing fraudulent concealment" of the pre-

negotiated agreement tolls the limitations period.  ECF No. 14 at 13.  They contend that

"fraudulent concealment tolls a statute of limitations when (1) there has been 'deliberate

---

    [8] The documents were filed in the instant Court by NNOC with its motion to dismiss.
Plaintiffs do not contest the validity of the Employee Interveners' Objections.  Because the
matter was referenced by Plaintiffs in the Complaint and the relevance is not disputed, the Court
may consider the documents.  *See Weiner*, 108 F.3d at 89; *Mediacom SE*, 762 F.3d at 400.

(5:13cv1073)

concealment' of (2) 'material facts' relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through 'reasonable diligence.'" *Id*. (citing *Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 130 F.3d 1083, 1087 (D.C.Cir. 1997)).  This argument fails.  Count 1 does not allege that NNOC concealed material facts relating to the alleged wrongdoing.  Instead, Count 1 alleges the concealment is the wrongdoing.  NNOC has not concealed its concealment.  The statute of limitations is not tolled, and Count 1 is time-barred as to Plaintiffs Keener and Kelley.[9]

### IV.  Conclusion

For the reasons stated above, the Court grants NNOC's motion to dismiss.  Accordingly, the case is closed.

IT IS SO ORDERED.

  March 31, 2014                              */s/ Benita Y. Pearson*
Date                                       Benita Y. Pearson
                                           United States District Judge

---

[9]  There is no indication in the record as to when Plaintiffs Chizmadia and Manfull discovered the alleged concealment of the pre-negotiation agreement.

16